IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JEREMY LEE SMALLWOOD, ) | |
|     Plaintiff, ) | Case No. 7:22-cv-00383 |
| ) | |
| v. ) | |
| ) | By: Michael F. Urbanski |
| SHAWN PRICE, et al., ) | Chief United States District Judge |
|     Defendants. ) | |

## MEMORANDUM OPINION

Jeremy Lee Smallwood, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against the Southwest Virginia Regional Jail Authority ("Jail Authority") and two of its employees, Officer Shawn Price and Sergeant Elliott. The case is presently before the court on the Jail Authority's motion to dismiss, the defendants' motion for summary judgment, and Smallwood's motion for discovery. For the reasons set forth below, the defendants' motions, ECF Nos. 36 and 38, are **GRANTED**, and Smallwood's motion, ECF No. 52, is **DENIED**.

## Background

This action arises from events that allegedly occurred on May 11, 2021, while Smallwood was incarcerated at a regional jail in Abingdon, Virginia, that is operated by the Jail Authority. On that day, Sergeant Elliott returned Smallwood to the medical unit in a wheelchair following a meeting with Major Kilgore and Captain Tatum. Am. Compl., ECF No. 17, at 4. Smallwood had recently undergone surgery on his amputated leg. Id. at 4–5.

Upon arriving at his cell, Smallwood noticed that the pillows and blankets issued by the hospital had been taken from the cell. Id. at 4. He refused to enter the cell until he spoke

to Major Kilgore again. Id. He alleges that Sergeant Elliott then tried to push his wheelchair through the cell door, but Smallwood put his left foot on the wall to prevent being wheeled into the cell. Id. After denying another request to speak to Major Kilgore, Sergeant Elliott allegedly tried to choke Smallwood and dump him out of the wheelchair. Id. at 4–5.

Other officers, including Officer Price, arrived on the scene. Id. at 5. Smallwood alleges that Officer Price violently jerked him from the wheelchair and drug him into the cell. Id. Sergeant Elliott then struck his amputated leg. Id.

At the conclusion of the amended complaint, Smallwood alleges that the Jail Authority failed to "train employees on proper methods [for] dealing with disabled inmates" and failed to "implement policy minimizing the safety risk to . . . disabled inmates." Id. He further alleges that the Jail Authority failed to "adhere to proper health and safety standards for serious medical conditions and disabled persons." Id.

## Procedural History

Smallwood commenced this action under 42 U.S.C. § 1983 on July 7, 2022. ECF No. 1. On November 3, 2022, Smallwood filed an amended complaint against the Jail Authority, Officer Price, and Sergeant Elliott. ECF No. 17. He seeks to recover compensatory and punitive damages for the use of excessive force on May 11, 2021. Id. at 3–6.

The Jail Authority has moved to dismiss the claims against it under Federal Rule of Civil Procedure 12(b)(6), ECF No. 36, and all three defendants have moved for summary judgment under Rule 56(a) on the basis that Smallwood failed to exhaust available administrative remedies prior to filing suit, ECF No. 38. Smallwood has filed a series of

responses in opposition to the defendants' motions. See ECF Nos. 40, 41, 46, 50, and 51.[1] He has also filed a motion for discovery under Rule 56(d). ECF No. 52.

## **Standards of Review**

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While a complaint does not need "detailed factual allegations," merely offering "labels and conclusions," "naked assertion[s] devoid of further factual enhancement," or "a formulaic recitation of the elements of a cause of action will not do." Id. (internal quotation marks and citation omitted).

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013) (quoting Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986)). When ruling on a motion for summary judgment, the court must view the evidence

---

[1] The court will refer to Smallwood's responses by their respective ECF numbers.

in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. To survive summary judgment, there must be sufficient evidence from which a reasonable finder of fact could return a verdict in the nonmoving party's favor. Id. at 252. "Conclusory or speculative allegations do not suffice to oppose a properly supported motion for summary judgment, nor does a mere scintilla of evidence." Matherly v. Andrews, 859 F.3d 264, 280 (4th Cir. 2017) (internal quotation marks and citation omitted).

## Discussion

### I. The Jail Authority's Motion to Dismiss

Smallwood filed suit against the defendants under 42 U.S.C. § 1983, which provides a private cause of action for those whose constitutional rights have been violated by state or local government actors. A local government entity, such as a regional jail authority, can be held liable under § 1983 only if the plaintiff shows that the entity's policy or custom was a "moving force" behind the constitutional violation. Polk Cnty. v. Dodson, 454 U.S. 312, 326 (1981) (quoting Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)); see also Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) ("Only in cases where the municipality causes the deprivation 'through an official policy or custom' will liability attach.") (quoting Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)). "And to get past the pleading stage, a complaint's description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts." Henderson v. Harris Cnty., 51 F.4th 125, 130 (5th Cir. 2022) (internal quotation marks and citation omitted).

Smallwood's amended complaint does not contain sufficient facts to state a claim for relief against the Jail Authority. He has not plausibly alleged that an official policy or custom was the moving force behind the alleged violation of a constitutional right. Although a policy

or custom for which a municipal entity may be held liable can arise "through an omission, such as a failure to properly train officers," Lytle, 326 F.3d at 471, Smallwood's conclusory allegations in this regard are insufficient to withstand dismissal under Rule 12(b)(6). See Henderson, 51 F.4th at 130–32; see also Litchfield v. Rinehart, No. 1:21-cv-02101, 2022 WL 3716525, at *6 (D. Md. Aug. 29, 2022) (dismissing a Monell claim against a police department where the complaint merely alleged, in a conclusory fashion, that the police department failed to establish policies and inadequately trained its officers). Accordingly, the court will grant the Jail Authority's motion to dismiss.

II. **The Parties' Motions under Rule 56**

The defendants have moved for summary judgment under Rule 56(a) on the basis that Smallwood failed to exhaust his administrative remedies before filing suit, as required by the Prison Litigation Reform Act ("PLRA"). Smallwood has filed responses in opposition to the motion for summary judgment. He has also filed a motion for discovery under Rule 56(d).

A. **Smallwood's Motion for Discovery**

The court will first address Smallwood's motion for discovery under Rule 56(d). In the motion, Smallwood seeks to obtain discovery relevant to the merits of his claim of excessive force, including "video of [the] May 11, 2021 incident," medical records, policies on the use of force, officer disciplinary records, and "any report of excessive force used by any officer at the jail." Pl.'s Mot. Discovery, ECF No. 52, at 2. He argues that the requested discovery "will prove the nature of the excessive force used" by the officers and that it should be produced "prior to any ruling" on summary judgment. Id. at 1–2.

Rule 56(d) permits a court to defer consideration of a motion for summary judgment and allow time for discovery "[i]f a nonmovant shows by affidavit or declaration that, for

specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Relief under Rule 56(d) is "broadly favored and should be liberally granted in order to protect nonmoving parties from premature summary judgment motions." Pledger v. Lynch, 5 F.4th 511, 526 (4th Cir. 2021) (internal quotation marks and citations omitted). In Pledger, the United States Court of Appeals for the Fourth Circuit "held that it is appropriate to excuse 'technical compliance' with Rule 56(d), especially with pro se plaintiffs where the district court is put on 'fair notice of a potential dispute as to the sufficiency of the summary judgment record.'" Firewalker-Fields v. Lee, 58 F.4th 104, 123 (4th Cir. 2023) (quoting Pledger, 5 F.4th at 526); see also Goodman v. Diggs, 986 F.3d 493, 500 (4th Cir. 2021) (concluding that an inmate should have been afforded relief under Rule 56(d) since "outstanding discovery requests existed on material issues" relevant to the defendants' motion for summary judgment). On the other hand, a Rule 56(d) motion is properly denied "when the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment." Hodgin v. UTC Fire & Sec. Ams. Corp., 885 F.3d 243, 250 (4th Cir. 2018) (internal quotation marks and citation omitted); see also Firewalker-Fields, 58 F.4th at 124 (concluding that a pro se inmate was not entitled to relief under Rule 56(d) since the requested discovery "would not have aided in developing essential facts").

In this case, the defendants have moved for summary judgment solely on the basis that Smallwood failed to exhaust his administrative remedies. Smallwood's motion does not request discovery relevant to the issue of exhaustion or otherwise provide "fair notice of a potential dispute as to the sufficiency of the summary judgment record" with respect to that issue. Pledger, 5 F.4th at 526. Instead, he seeks to discover video footage, medical records, and other documents pertinent to the substantive merits of his excessive force claim. Because

6

the merits-based discovery requests are not relevant to the exhaustion defense, Smallwood's motion for discovery will be denied, and the court will proceed to address the defendants' motion for summary judgment.

### B. The Defendants' Exhaustion Defense

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). The exhaustion requirement "serves two main purposes." Woodford v. Ngo, 548 U.S. 81, 89 (2006). First, it "protects administrative authority" by giving "an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court" and discouraging "disregard of the agency's procedures." Id. (internal quotation marks, brackets, and citation omitted). Second, it "promotes efficiency" since claims "generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." Id. "And even where a controversy survives administrative review, exhaustion of administrative remedies may produce a useful record for subsequent judicial consideration." Id. (internal quotation marks and citation omitted).

Over the past twenty years, the Supreme Court has "strictly interpreted" the PLRA's exhaustion provision. Williams v. Carvajal, 63 F.4th 279, 285 (4th Cir. 2023). The Court has held that the provision "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some

other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The Court has also held that "proper exhaustion" is required, which means that "a prisoner must complete the administrative review process in accordance with applicable procedural rules, including deadlines, as a precondition for bringing suit in federal court." Woodford, 548 U.S. at 88, 90. Thus, an "untimely or otherwise procedurally defective administrative grievance" does not satisfy the exhaustion requirement. Id. at 83–84. Additionally, "[t]he PLRA requires a prisoner to exhaust administrative remedies 'regardless of the relief offered through administrative procedures.'" Williams, 63 F.4th at 285 (quoting Booth v. Churner, 532 U.S. 731, 741 (2001)).

The Supreme Court "has also made it clear that it will not read 'exceptions into statutory exhaustion requirements where Congress has provided otherwise.'" Id. (quoting Booth, 532 U.S. at 741 n.6). "For that reason, mandatory exhaustion statutes like the PLRA . . . foreclos[e] judicial discretion," meaning that "a court may not excuse a failure to exhaust, even to take [special] circumstances into account." Ross v. Blake, 578 U.S. 632, 639 (2016). The only exception to the PLRA's exhaustion requirement is "the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Id. at 648. If an administrative remedy "is not capable of use to obtain relief . . . , an inmate's duty to exhaust 'available' remedies does not come into play." Id. at 643. The Supreme Court has identified three circumstances in which an administrative grievance procedure is not "capable of use" in this sense: (1) where the procedure "operates as a simple dead end," with correctional officials "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the procedure is "so opaque" that it is "practically . . . incapable of use" because "no ordinary prisoner can discern or navigate it"; and (3) where correctional officials "thwart inmates from taking advantage of a grievance procedure through machination, misrepresentation, or

8

intimidation." Id. at 643–44; see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it.").

Because "failure to exhaust is an affirmative defense under the PLRA," defendants bear the burden of establishing that an inmate failed to exhaust his administrative remedies. Jones, 549 U.S. at 216. Once defendants establish that a plaintiff failed to exhaust, however, "the onus falls on the plaintiff to show that remedies were unavailable to him." Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011); see also Graham v. Gentry, 413 F. App'x 660, 663–664 (4th Cir. 2011) (concluding that summary judgment was appropriate where an inmate failed to fully comply with a jail's grievance procedure and failed to "adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure").

### 1. The Jail Authority's Inmate Grievance Procedure

The defendants have submitted an affidavit executed by Jeannie Patrick, the Administrative Lieutenant for the Jail Authority. According to the affidavit and the accompanying exhibits, the Jail Authority's inmate grievance procedure is set forth in the inmate handbook. Patrick Aff., ECF No. 38-1, at ¶ 2. A copy of the inmate handbook is attached to Patrick's affidavit as Exhibit A, and a copy of Smallwood's inmate orientation form advising him of the handbook and how to access it is attached to the affidavit as Exhibit B.

The inmate grievance procedure is explained on page 28 of the inmate handbook, and it includes several steps. See Patrick Aff. Ex. A, ECF No. 38-2, at 28. An inmate must first make a good faith effort to informally resolve an issue using request forms available on a

computer kiosk.² Id. If the inmate is dissatisfied with the response to the request form, he may file a grievance "within 7 days of the occurrence," either by submitting a grievance on the kiosk or by using a printed grievance form. Id. "If the issue [raised in the grievance] is an emergency, it may be forwarded to the Shift Commander." Id. "If the Shift Commander finds the grievance not to be an emergency then he/she will indicate said finding and forward[ the grievance] to the Grievance Officer." Id. The facial validity of the grievance is then "reviewed to determine if it meets the definition of a grievance and if proper informal resolution attempts have been made."³ Id. If the grievance fails to satisfy these requirements, "it will be returned . . . within nine (9) days of receipt stating the reason it is not valid." Id. If the grievance is determined to be valid, a "written finding" will be provided "within nine (9) days of receipt." Id. If an inmate is dissatisfied with a response to a grievance, he may submit an appeal to the Chief of Security within seven days of receiving the response. Id. That appeal is the final step of the grievance process. Id.

### 2. Smallwood's Kiosk Submissions

According to Patrick's affidavit and the accompanying exhibits, Smallwood used the kiosk multiple times while he was incarcerated at the regional jail in Abingdon. On May 12, 2021, the day after the incident at issue, Smallwood used the kiosk to submit a disciplinary appeal directed to Captain Tatum. In that submission, which the kiosk system designated as

---

² The inmate handbook describes the kiosk as a "[c]omputer generated information system for inmate's [sic] to notify institutional personnel with concerns or complaints." Patrick Aff. Ex. A at 10. The handbook instructs inmates to direct their complaints to the appropriate department for which they want a response. Id.

³ A "grievance" is defined as "[a] complaint made in good faith about the substance or application of any written or unwritten policy or regulation or the absence of the policy or regulations, or about any behavior or action directed toward an inmate by a facility employee or other inmates, or a complaint about conditions of confinement." Patrick Aff. Ex. A. at 9.

10

"Disciplinary Appeals - 8,845,283," Smallwood reported that he had "filed a complaint with [the Department of Justice] civil rights division about being drug out of [his] wheelchair and . . . kicked in [his] amputated leg" and that his attorneys were "taking action against everyone involved," particularly Officer Price and Sergeant Elliott. Patrick Aff. Ex. C., ECF No. 38-4, at 1. In a response provided two days later, on May 14, 2021, Captain Tatum advised Smallwood that he had selected the kiosk module used "for disciplinary appeals only," and that if he "need[ed] to make a request or grievance," he must "use the proper module." Id.

Over the next three months, Smallwood used the kiosk to submit requests for medication or medical treatment, inquiries regarding his inmate account balance, disciplinary appeals, and a security request for video footage from May 11, 2021. Patrick Aff. ¶ 9. However, despite being informed that a disciplinary appeal was not the appropriate vehicle for grieving the alleged misconduct by Price and Elliott, Smallwood did not submit a grievance regarding the officers' behavior within seven days, as required by the inmate grievance procedure, or at any other time during that three-month period. Id. ¶¶ 7, 9.

On August 15, 2022, after filing the instant action, Smallwood submitted a grievance alleging that Price and Elliott had "violently jerked [him] from [his] wheelchair" on May 11, 2021, and that video footage should be preserved for litigation. Patrick Aff. Ex. D, ECF No. 38-5, at 1. Smallwood asserted that he had already "filed a grievance under the disciplinary appeals to Capt. Tatum attempting to seek a resolution" and that he had also "complained about this incident in a request dated 6/18/2021."[4] Id. The grievance was rejected by an

---

[4] According to the defendants' evidence, Smallwood filed a disciplinary appeal on June 17, 2021, in which he requested video footage from May 11, 2021. Patrick Aff. ¶ 9. In response, Smallwood was advised that a disciplinary appeal is used "for the appeal of inhouse charges" and that he "would need to make this request on the security tab." Id. (internal quotation marks omitted). Two days later, Smallwood submitted a security request for the video footage. Id.

11

officer on August 17, 2022, on the basis that it was a "repeat request." Id. Smallwood did not appeal the decision. Patrick Aff. ¶ 7.

### 3. Analysis

Although Smallwood did not submit a timely grievance in accordance with the Jail Authority's inmate grievance procedure, he makes three arguments as to why his case should not be dismissed for failure to exhaust. First, he argues that no administrative remedies were available for his excessive force claim against Price and Elliott. Second, he argues that he did, in fact, exhaust his administrative remedies. Third, he suggests that the exhaustion requirement should be waived or excused under the particular facts of this case. The court will address these arguments in turn.

#### a. Availability

In his various responses to the defendants' motion, Smallwood contends that an administrative remedy was not available for his claim of excessive force. As explained above, the Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 643. One situation is when the grievance process "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief." Id. Smallwood specifically invokes that exception, arguing that he spoke to Captain Tatum three times concerning the incident; that he asked Captain Tatum to "fire those involved and charge them as a remedy"; and that Captain Tatum responded, "Smallwood, you know I can't do that." ECF No. 51 at 3 (internal quotation marks omitted); see also ECF No. 50 at 2–3 (asserting that the Captain's unwillingness to take the requested actions "amounts to . . . a remedy operat[ing] as a simple dead end") (internal quotation marks omitted).

12

Smallwood's arguments in this regard reflect a misunderstanding of what it means for a remedy to be "available" under the PLRA. A grievance process provides an "available" remedy when it is "'capable of use' to obtain 'some relief for the action complained of.'" Ross, 578 U.S. at 642 (quoting Booth, 532 U.S. at 738). "Where there is the possibility of some relief, . . . a prisoner must 'exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands.'" Varner v. Shepard, 11 F.4th 1252, 1258 (11th Cir. 2021) (quoting Booth, 532 U.S. at 738). Thus, "as long as 'the administrative process has authority to take some action in response to a complaint, [even if] not the remedial action an inmate demands,' administrative remedies are 'available.'" Muhammad v. Mayfield, 933 F.3d 993, 1000 (8th Cir. 2019) (quoting Booth, 532 U.S. at 737–38). This means that Smallwood "had to exhaust any [jail] administrative process that (1) was empowered to consider his complaint and (2) could take some action in response to it." Larkin v. Galloway, 266 F.3d 718, 723 (7th Cir. 2001).

Here, as in Larkin, Smallwood "does not contend that his excessive force complaint . . . somehow lay beyond the authorized jurisdiction of the [Jail Authority's] administrative process." Id. Nor could he, given that the handbook makes clear that the inmate grievance procedure applies to complaints "about any behavior or action directed toward an inmate by a facility employee." Patrick Aff. Ex. A at 9. Moreover, Smallwood has failed to show that there was no form of action or relief that could have been provided through the administrative remedy process. At a minimum, a grievance complaining of excessive force could have been reviewed or investigated by a Shift Commander or Grievance Officer, and the internal review might have resulted in further action to address the officers' alleged misconduct. See Varner, 11 F.4th at 1259 (holding that an inmate grievance procedure offered "'the possibility of some

13

relief' in the form of forwarding the excessive force complaint [for investigation]") (quoting Booth, 532 U.S. at 736 n.4); see also Larkin, 266 F.3d at 723 (concluding that "some action" could have been taken in response to a complaint of excessive force, even after the inmate's wounds had healed, since "officers might have been disciplined, he might have been moved to a unit or facility not under the defendants' supervision, and, at a minimum, he would have received a hearing on his grievance"); Donahue v. Wilder, 824 F. App'x 261, 266 (5th Cir. 2020) (noting that a grievance procedure could have provided an inmate with relief, "had he completed all three steps," and that correctional officials "did take action by responding to [his] Step One and Step Two complaints").

The Supreme Court has made clear that the PLRA requires exhaustion "regardless of the fit between a prisoner's prayer relief and the administrative remedies possible," and "irrespective of the forms of relief sought and offered through administrative avenues." Booth, 532 U.S. at 739, 741 n.6. Thus, even assuming that Captain Tatum could not personally terminate or criminally charge other officers based on an inmate's allegations, the inability to obtain particular relief through an administrative grievance process does not render the process unavailable or excuse an inmate's failure to exhaust. Id.; see also Burnett v. Miller, 736 F. App'x 951, 953 (2018) ("[Plaintiff's] contention that the grievance procedure offers no available relief because monetary relief and discipline to staff are non-grievable issues is also unavailing. Congress meant to require procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible.") (internal quotation marks omitted) (citing Booth, 532 U.S. at 739); Napier v. Laurel Cnty., 636 F.3d 218, 222 (6th Cir. 2011) (explaining that "exhaustion is required even if the prisoner subjectively believes the remedy is not available; even when the state cannot grant the particular relief requested;

14

and even where [the prisoners] believe the procedure to be ineffectual or futile") (internal quotation marks and citation marks omitted).

On this record, no reasonable factfinder could conclude that "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." Booth, 532 U.S. at 736. Nor is there any evidence that jail officials are "unable or consistently unwilling to provide any relief to aggrieved inmates." Ross, 578 U.S. at 643 (emphasis added). Accordingly, Smallwood has failed to demonstrate that the inmate grievance procedure was a "dead end" or otherwise "unavailable" to him through no fault of his own. Id.

### b. Exhaustion

Smallwood alternatively argues that "he in fact did exhaust" his administrative remedies." ECF No. 41 at 6. Although he acknowledges that he technically used the "wrong tab" to file a disciplinary appeal on May 12, 2021, he asserts that a disciplinary appeal "goes straight to the Captain" and that an officer had previously told him to contact the Major or the Captain if he experienced any problems. ECF No. 50 at 1. Additionally, since "Capt. Tatum is the Chief of Security who processes appeals or convenes a review board," Smallwood contends that the disciplinary appeal "went up the chain of command addressing this issue." ECF No. 40 at 9. He also emphasizes that he "attempted to resolve this issue" by "speaking" to Captain Tatum and Lieutenant Steele about the incident and that he ultimately "did file a grievance" on August 15, 2022. Id. at 3, 10.

As previously explained, the PLRA requires inmates to exhaust administrative remedies "before filing suit," Jones, 549 U.S. at 202, and the Supreme Court has interpreted the PLRA to require "proper exhaustion" in accordance with a jail's "critical procedural rules,"

15

Woodford, 548 U.S. at 90. This "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Id. Consequently, "a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance." Scott v. Ambani, 577 F.3d 642, 647 (6th Cir. 2009).

    Against this backdrop, the court concludes that no genuine issue of material fact exists as to whether Smallwood satisfied the exhaustion requirement. It is clear from the record that he did not properly complete each step of the inmate grievance process prior to filing suit. Although he filed a disciplinary appeal within the requisite time frame, that submission did not satisfy the applicable procedural rules, and the grievance procedure contains no provision permitting inmates to skip steps or bypass the grievance process altogether. Despite being informed by Captain Tatum that he must use the proper module for submitting a request or grievance, Smallwood did not do so in a timely manner. And the mere fact that he made Captain Tatum aware of the allegations of excessive force, both through verbal complaints and the improper disciplinary appeal, does not suffice to satisfy the exhaustion requirement. See Brewer v. Mullin, 130 F. App'x 264, 265 (10th Cir. 2005) ("[Plaintiff] argues on appeal that he exhausted his remedies by presenting his issues to the warden and [the Department of Corrections]. Simply presenting a defective or non-complying grievance, however, does not constitute exhaustion of administrative remedies."); see also Varner, 11 F.4th at 1261 (noting that a formal grievance must be submitted to initiate the applicable grievance process and, thus, that "informal complaints . . . do not satisfy the 'proper exhaustion' requirement"); Muhammad, 933 F.3d at 1003 (explaining that unexhausted grievances do not satisfy the

16

exhaustion requirement even if they alert the correctional facility of the nature of the wrong for which relief is sought).

Additionally, neither the August 2022 grievance nor the subsequent response creates a genuine dispute of fact as to whether Smallwood properly exhausted his administrative remedies. That grievance, which referred to the alleged incident on May 11, 2021, and sought to preserve video footage of the incident, was not submitted until after Smallwood had already filed this action. It is well established that "[s]ubsequent exhaustion after suit is filed . . . is insufficient and will not save a case from dismissal." Hayes v. Dahlke, 976 F.3d 259, 271 (2d Cir. 2020) (internal quotation marks and citation omitted); see also Hardin v. Hunt, No. 21-7195, 2023 WL 3969989, at *3 (4th Cir. June 13, 2023) (concluding that an inmate was required to comply with the exhaustion requirement before filing suit and that his noncompliance could not be cured by filing an amended complaint). While Smallwood emphasizes that the grievance was denied as a "repeat request," the record reflects that he had already submitted a security request for the same video footage. See Patrick Aff. ¶ 9. In any event, regardless of whether the August 2022 grievance was correctly denied as a repeat request, the response to that untimely grievance, which Smallwood did not appeal, does not create a factual question as to whether Smallwood "complete[d] the administrative review process in accordance with the applicable procedural rules, including deadlines," as required to satisfy the exhaustion requirement. Woodford, 548 U.S. at 88.

Finally, the court must reject Smallwood's argument that the exhaustion requirement should be waived or excused based on the particular facts of this case. See ECF No. 40 at 3–4, 10 (asserting that it would be a "miscarriage of justice" to dismiss the case on the basis of a "technicality," particularly since there is video footage of the alleged incident). As indicated

17

above, "a court may not excuse a failure to exhaust, even to take [special] circumstances into account." Ross, 578 U.S. at 639. Thus, no matter how sympathetic the court may find an inmate's allegations, the court has no authority to waive or excuse the exhaustion requirement. Id.; see also Varner, 11 F.4th at 1264 (emphasizing that "the statutory language and relevant case law make it clear that courts are not free to fashion exceptions to the exhaustion requirement, even when the circumstances of a particular case may seem to merit one").

In sum, there is simply no evidence from which a reasonable factfinder could conclude that Smallwood properly exhausted his administrative remedies prior to filing suit or that the administrative grievance procedure he could have utilized was unavailable to him through no fault of his own. Accordingly, the defendants are entitled to summary judgment on the exhaustion defense.

## Conclusion

For the reasons stated, the Jail Authority's motion to dismiss, ECF No. 36, and the defendants' motion for summary judgment, ECF No. 38, are **GRANTED**, and Smallwood's motion for discovery, ECF No. 52, is **DENIED**. An appropriate order will be entered.

Entered: August 3, 2023

Digitally signed by Michael F. Urbanski Chief U.S. District Judge
Date: 2023.08.03 09:37:36 -04'00'

Michael F. Urbanski
Chief United States District Judge